Case number 15-7044, Burke & Reedy, LLP and James Eddie Burke as Esquire Attorney Appellates v. American Guarantee & Liability Insurance Company. Mr. Burke for the appellate, Mr. Smith for the appellate. Mr. Burke, we're ready for you. Good morning. May it please the court, my name is James Burke. I'm representing myself and Burke & Reedy in this action. Before the court, I reserve two minutes for rebuttal. This case involves an insurance coverage case. It started with a lawsuit that was filed in the Superior Court in 2005. We gave, Burke & Reedy gave appropriate notice to the insurance, the insurance company, insurer who is American Guarantee & Liability Company. And the insurance company denied coverage on the basis that the, there were two exclusions in the policy which apply. The so-called insured status exclusion, the business enterprise exclusion. There's no question that the claim was filed timely and that there was coverage but for their position on the two exclusions. We, I pointed out that a complaint may, claims may have multiple aspects to them. In this case, there was a complaint file, original complaint file and an amended complaint file. And that there could be, and there were in this case, claims which did not fit within the exclusions of the policy. And therefore, there was a duty to defend by America. So, and that the fact that the, some claims that are, that might be subject to an exclusion, or some potential claims which are not subject to an exclusion, which is the Brohan case in Maryland, there should be a duty to defend. So, the two exclusions in this case, the insured status and the business enterprise, speak to claims arising out of, in the case of the business enterprise, activities of a insured performed on behalf of a company in which, or an entity in which he has a controlling interest. And the insurance policy defines that controlling interest, oddly enough, at 10%. And the business enterprise exception, I mean, excuse me, the insured status exception, exclusion, is where the claims arose out of the business relationship that the insured had with the claimant, which would be like officer, director, and the like. If there are claims that are- Mr. Burke? Yes. I find it easier to focus on the business enterprise exclusion. Okay. And so, it's not just about arising out of, it's arising out of in whole or in part. Yes. Okay. So, what's your best, which claim do you think did not arise out of, in whole or part, a relationship with the business enterprise here? I think, for example, the claim for negligent supervision. And why do you think that that doesn't arise out of? Well, there's nothing in the claim that makes any relationship to the business aspect that was the basis for it. But it's negligent supervision relating to your activities on behalf of the business enterprise. It doesn't say that, though, Your Honor. It basically just says negligent representation and not supervising. It's negligent representation about something. It's not in the abstract. The rest of the complaint makes clear what it's about. There's a Supreme Court case on this question, United States v. Shearer, which is about the Federal Tort Claims Act. And there's an exclusion in that act for any claim arising out of assault or battery. Assault or battery. And in that case, the plaintiff's claim was negligent failure to prevent, which seems very much like what we're talking about here. And the court said, well, negligent failures to prevent claims arise out of the assault or battery. And there are several D.C. cases, including our own in interstate fire and casualty, that are all in Essex Insurance, all of which are independent petrochemical corporations, and all of which are about negligent supervision. And as long as it's negligent supervision of something that relates to a claim based on a relationship to a business enterprise, it's included. I don't understand how this is different. Well, for example, there's another portion of the complaint that talks about negligence in dealing with something called the Howey Trust. All right, I understand that one, and so if you want to move on to that one, that's fine. Okay. So my understanding about that one, these are the two that I was wondering about myself. Okay. The negligent supervision and the Howey. But the Howey Trust, as I read the complaint, and it's quite express, their claim is that the business needed the house that was in the Howey Trust and could not use it for a loan as long as it was in a trust. And therefore, getting it out of the trust was important for the financing to CTI. Isn't that the nature of the claim about the Howey Trust? I think that there was an attempt to get a loan prior to CTI, and that was what that applied to, but it also applied to CTI. So if I'm looking, for example, at the original complaint, paragraph 295, it says, Burke directed the conveyance in this manner in order to ensure that the property would be made available for financing to CTI, from which Burke benefited. I'm not, of course, saying that you did benefit. I understand. But that seems definitely to arise out of the relationship to CTI, and this is all about the Howey Trust. Paragraph 300 says it was predicated, failure to inform Gratian and Monica was predicated upon a self-serving interest in making the property subject to the CTI loan. So that all seems to arise out of, at least in whole or in part, I'll take the in part part, the relationship to the business enterprise. Well, the aspect, which is the slightest side with the in part, it seems to me it introduces a potential ambiguity in the interpretation of arising out of, which is not defined in the insurance contract. Right, but the cases say that arising out of generally means more liberally related to than proximate cause. And so that if you add on top of that in part, that makes it even more expansive coverage. Exclusion. Of exclusion. Exclusion. Yeah, I'm sorry. Good point. More expansive exclusion. Sorry. It's only ambiguous in the sense that it expands the exclusion. It certainly doesn't restrict the exclusion. I'm sorry? It doesn't restrict the exclusion by saying in part. No, it does expand it, and that's where I felt like what does in part mean in this context? Is it 1%, 10%, 30% or what? So that's what I saw and we saw as an ambiguity. Okay. You may want to save the rest of your time. I think I will do that. Okay. Good morning, Your Honors, and may it please the Court. My name is Adam Smith. I'm with the law firm of Coughlin & Duffey, and I represent American Guarantee and Liability Insurance Company in this matter. Your Honors, this is a case about a business transaction that went bad, and the insured attorney now attempting to shoehorn his business liabilities for an outside venture into his professional liability insurance policy. The district court recognized that these claims fall squarely within the business enterprise and insured status exclusions, resulting in the insurance company having no obligation to defend or indemnify its insured for these particular claims. And there's three particular reasons that really form the basis for that decision and why the decision should be affirmed. It is admitted that the insured attorney in this situation, Mr. Burke, was a managing member of an outside business venture, the CTI, and that he had an ownership interest in that business venture of over 32.5%. It's undisputed that the underlying complaint against the insured attorney is predicated on the underlying plaintiff, Mr. Yatskevich. Could I just, so I understand, does the insurance company also sell coverage for business enterprises for liability in connection with a business enterprise? Your Honor, American Guarantee sells multiple lines of insurance, and I'm certain that they insure businesses on numerous occasions. So he could have bought an additional coverage for that purpose? Absolutely, Your Honor, and that's precisely why the exclusions are in this type of policy. The professional liability policy is underwritten to protect an attorney for its losses arising out of its legal practice as a law firm. And when they underwrite a policy like that, they'll look at things like what type of practice do you have and how big is the practice, how many people do you employ in that practice. They're not looking at and basing the premium and underwriting based upon what outside business ventures you may be involved in and then assessing that risk and determining that they're going to accept the transfer of that risk. They specifically don't accept the transfer of that risk by placing these exclusions in the policy. And this complaint clearly arises out of the underlying plaintiff's losses because of a failed investment that he was induced to invest in by Mr. Burke and his partner. The policy is clear and unambiguous that such losses don't apply to this policy. Now, Mr. Burke, the insured attorney, attempts to pull out specific allegations out of the complaint in an effort to create coverage where it doesn't exist under this policy. But if you confine this analysis to any particular claim, the negligent supervision, as you just pointed out, the specific count related to legal malpractice, what becomes abundantly clear in a review of those allegations is that they're all predicated upon the conflict of interest and the self-dealing that was alleged by the underlying plaintiff against Mr. Burke. And that's what results in what he calls legal malpractice in the underlying case. He complains of conflicts of interest. Exclusion A, the business enterprise exclusion, specifically says if the claim arises out of, in whole or in part, from the insured attorney's acts for his business venture, and those acts in this case would be the inducement of Mr. Yatskevich to invest in the business venture, CTI, and the procurement of that loan for CTI, the hard money banker's loan and the house trust and all that, then the acts in furtherance of that loan, if those are the acts that in whole or in part give rise to the claim and that business venture is a business venture in which the insured attorney has a controlling interest, coverage does not exist. And we cited the Mount Airy case from the First Circuit. We cited the K2 case, which was most recently cited by the New York Court of Appeals. And we cited the Potomac case from Arizona, all of which stand for that exact proposition and, frankly, support the position American Guarantee is taking in this case. The same analysis applies to the insured status exclusion, exclusion D, for claims arising in whole or in part of the insured status as an officer, director, manager of a business enterprise. Again, it's not disputed that the insured attorney here, Mr. Burke, was an officer-slash-director or a managing member of CTI. And as the district court recognized, the allegations of this complaint are clear, that the problem, the allegations focus on the fact that Mr. Burke was wearing two hats, one for CTI and, at least as alleged, one as an attorney for Mr. Yatskevich. And that's precisely the situation that the insured status exclusion seeks to avoid. And it was said as clear as could be in the K2 decision by the New York Court of Appeals, in which, in circumstances very similar to this, they said when the insured is serving two masters, his business venture and his alleged client, the insured status exclusion is intended to avoid coverage in those circumstances. I want to address briefly some of the other issues raised by Mr. Burke in his reply brief, this issue of what he calls the potentiality doctrine, as well as the ambiguities in the contract. The potentiality doctrine applies in a situation where there's the potential for a covered claim. And I think he referred to the Brohan case during his argument. There is no potential for coverage in this case, Your Honor. The Brohan case dealt with an intentional versus a negligent act alleged in the case, and based on appeals. That's the Fifth Circuit case? No, the Brohan case, I believe, is a Maryland case, Your Honor. Maryland. All right, thanks. How do you spell it, just so I'm clear? I think it's B-R-O-W-H-A-N. All right, thank you. But don't hold me to that spelling. But it's the Maryland case. Yes, it is. And the other one that I was referring to, because I know he's… The Fifth Circuit case I referred to earlier was the Mount Airy case, which I… No, that's First Circuit. I'm sorry, you're correct. That's all right, but he placed a lot of emphasis on this Fifth Circuit case where the judge said, I don't see why I have to look beyond the allegations of this in isolating the malpractice. I think that's the Jensen case, Your Honor. Jensen, that's it. Jensen, right? Right, yes. And you don't have to look outside the allegations in this case, and we're not asking this Court to do that. We recognize when you're determining an insurer's duty to defend, you don't look outside the complaint. But when you look at the complaint in this case, whether you look at the original complaint or the amended complaint, you can reach no other conclusion that there is no claim within there that potentially could be covered. As I was pointing out with the Brohan case, it dealt with an intentional versus negligent act and an alleged wrongdoer who had entered into a guilty plea. So the insurer took the position they admitted it was an intentional act. Well, there was the potential that a jury found it was only negligence in the subsequent civil trial, so the Court said there's the potential for coverage. It's not what you have here. All of the claims are predicated upon self-dealing, conflicts of interest, which fall squarely within the two exclusions that the District Court relied upon. The last issue is just this issue of ambiguity, and he alleges that the policy is ambiguous in two different ways that the words arising out of are somehow ambiguous. We believe the McCloskey case from this Court, as well as the Northern Assurance v. EDB case from the Maryland Court, both speak to that issue and recognize that arising out of is non-ambiguous. It applies a liberal standard of causation and an expansive review of that language. He also alleged ambiguity in the words controlling interest. Your Honor, the fact that the policy in Black's Law Dictionary do not define controlling interest in the same manner, does not create an ambiguity. Controlling interest is very clearly defined by the policy, and there's no other reasonable interpretation of that language than the interpretation being presented by American Guarantee. The bottom line is this claim emanates from conflict of interest, self-dealing, from Mr. Burke's involvement with his business enterprise, CTI, and his efforts to get financing for a transaction for that company. It falls squarely within the insured status and business enterprise exclusions, and we request that the District Court ruling be affirmed. Unless you have any further questions, I will thank Your Honors. Thank you. Does Mr. Burke have any time? Mr. Burke. That is the Jensen case, Judge Rogers. Thank you. From the Fifth Circuit. The other thing that's a little pointed out to the Court was that malpractice was alleged in this complaint and it survived the summary judgment as well as a breach of duty of care. I think that it's appropriate to not extrapolate an impart or a claim that has some aspects but very slight coloring to defeat there being at least one or more claims in our complaint. Which paragraph of the complaint is the malpractice? It would be in the, I'll refer to it in the amended complaint. Yes, so that's count 12 and count 13. Count 13 is malpractice in representing CTI. So that clearly is related to CTI, right? So you must be only talking about count 12. Yes. Okay, I'm in the red zone. Okay, thank you. Thank you. All right, we'll take the matter under submission. Thank you very much. Thank you.
judges: Garland, Rogers, Ginsburg